| | |
|---|---|
| 1 | RICHARD T. EGGER, Bar No. 162581 |
| | richard.egger@bbklaw.com |
| 2 | DAMIAN A. NORTHCUTT, Bar No. 258183 |
| | Damian.Northcutt@bbklaw.com |
| 3 | AVI W. RUTSCHMAN, Bar No. 298922 |
| | avi.rutschman@bbklaw.com |
| 4 | BEST BEST & KRIEGER LLP |
| | 2855 E. Guasti Road, Suite 400 |
| 5 | Ontario, CA  91761 |
| | Telephone:  (909) 989-8584 |
| 6 | Facsimile:  (909) 944-1441 |

Attorneys for Defendants
CITY OF SAN BERNARDINO; VIRGINIA MARQUEZ; BENITO J. BARRIOS (erroneously sued herein as BENITO J. BARRIO); JOHN VALDIVIA; FRED SHORETT; BESSINE L. RICHARD; JAMES L. MULVIHILL; R. CAREY DAVIS; JARROD BURGUAN; PAUL WILLIAMS; GARY D. SAENZ; JOLENA GRIDER; ANDREA MILLER, also known as ANDREA TRAVIS MILLER; AND MARK SCOTT

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| PEPE'S, INC., a California corporation dba Pepé's Towing, | Case No. 5:18-CV-02277-SVW (SPx) |
| Plaintiff, | Judge:  Hon. Stephen V. Wilson, Ctrm 10A |
| v. | **DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO STAY PROCEEDINGS PURSUANT TO DECISION IN PARALLEL STATE COURT PROCEEDINGS** |
| CITY OF SAN BERNARDINO, charter city organized under the laws of the State of California; VIRGINIA MARQUEZ, an individual, BENITO J. BARRIO, an individual, JOHN VALDIVIA, an individual, FRED SHORETT, an individual, BESSINE L. RICHARD, an individual, JAMES L. MULVIHILL, an individual, R. CAREY DAVIS, an individual, JARROD BURGUAN, an individual, PAUL WILLIAMS, an individual, GARY D. SAENZ, an individual, JOLENA GRIDER, an individual, ANDREA MILLER, an individual, also known as ANDREW TRAVIS MILLER, MARK SCOTT, an individual, and DOES 1-10, | Date:     January 13, 2020<br>Time:     1:30 p.m.<br>Ctrm:     10A<br><br>Complaint:  Oct. 24, 2018<br>FAC:        Dec. 21, 2018<br>SAC:        Feb. 7, 2019<br>TAC:        Mar. 14, 2019 |
| Defendants. | |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................. 1
II. THE STATE AND FEDERAL CASES ARISE OUT OF THE SAME CONDUCT, INVOLVE THE SAME PARTIES, AND SEEK TO VINDICATE THE SAME RIGHT ......................................................... 3
III. THE "PIECEMEAL LITIGATION" FACTOR FAVORS A STAY BECAUSE PROCEEDING WILL RESULT IN EITHER A CONFLICTING JUDGMENT OR A WASTE OF RESOURCES ............. 6
IV. THE SIGNIFICANT PROGRESS MADE IN THE STATE COURT FAVORS A STAY ............................................................................... 9
V. STATE COURTS HAVE CONCURRENT JURISDICTION OVER FEDERAL CONSTITUTIONAL CLAIMS ............................................ 11
VI. THE STATE COURT PROCEEDINGS CAN ADEQUATELY PROTECT PEPE'S FEDERAL RIGHTS ........................................... 12
VII. FAILING TO STAY THIS CASE WILL PROMOTE FORUM SHOPPING ............................................................................................ 13
VIII. THE STATE COURT PROCEEDING WILL RESOLVE ALL ISSUES BEFORE THE FEDERAL COURT ........................................ 14
IX. CONCLUSION ..................................................................................... 15

**TABLE OF AUTHORITIES**

Page

**Federal Cases**

Aetna Inc. v. Whatley Kallas, LLP
   No. CV 19-3532-JFW, 2019 WL 4137614 (C.D. Cal. July 9, 2019) ............... 12

American Int'l Underwriters, Inc. v. Continental Ins. Co.
   843 F.2d 1253 (9th Cir. 1988) ................................................................. 8, 9, 13

Brito v. New United Motor Mfg., Inc.
   No. C 06-06424-JF, 2007 WL 1345197 (N.D. Cal. May 8, 2007) ............ 7, 8, 10

Colorado River Water Conservation Dist. v. United States
   424 U.S. 800 (1976) ................................................................................ 7

Gintz v. Jack In The Box, Inc.
   No. C 06-02857, 2006 WL 3422222 (N.D. Cal. Nov. 28, 2006) ....................... 13

Goodin v. Vendley
   356 F.Supp.3d 935 (N.D. Cal. 2018) ............................................................. 3, 4

Intel Corp. v. Advanced Micro Devices, Inc.
   12 F.3d 908 (9th Cir. 1993) ............................................................................ 11

Komarnicki v. LinkUS Enterprises, LLC
   No. 116CV01602DADSKO, 2017 WL 3284434 (E.D. Cal. Aug. 2, 2017) ..... 4, 5

McKee v. Peoria Unified School Dist.
   963 F.Supp.2d 911 (D. Ariz. 2013) ................................................................ 12

Montanore Minerals Corporation v. Bakie
   867 F.3d 1160 (9th Cir. 2017) .................................................................... 3, 10

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.
   460 U.S. 1 (1983) ..................................................................................... 11, 12

Nakash v. Marciano
   882 F.2d 1411 (9th Cir. 1989) ................................................................ 3, 4, 13

Northrop Corp. v. McDonnell Douglas Corp.
   705 F.2d 1030 (9th Cir. 1983) ......................................................................... 8

Rotondo v. Blue Cross of Idaho
   No. 1:11-cv-00493-EJL-CWD, 2012 WL 1664089 (D. Id. Mar. 2, 2012) ........ 14

ScripsAmerica, Inc. v. Ironridge Global LLC
   56 F.Supp.3d 1121 (C.D. Cal. 2014) ................................................................. 3

Seneca Ins. Co., Inc. v. Strange Land, Inc.
   862 F.3d 835 (9th Cir. 2017) ........................................................... 2, 7, 10, 12

Travelers Indem. Co. v. Madonna
   914 F.2d 1364 (9th Cir. 1990) ........................................................................ 11

Vaghashia Family Limited Partnership v. Vaghashia
   LA CV19-01876 JAK (PLAx), 2019 WL 6974307 (C.D. Cal. Nov. 1, 2019) .... 7

**State Cases**

Brown v. Pitchess
   13 Cal.3d 518 (1975) ...................................................................................... 11

City of Bell v. Superior Court
   220 Cal.App.4th 236 (2013) ............................................................................. 5

Flores v. Department of Corrections
   224 Cal.App.4th 199 (2014) ............................................................................. 6

Merry v. Coast Community College Dist.
   97 Cal.App.3d 214 (1979) ................................................................................ 5

Olwell v. Hopkins
   28 Cal.2d 147 (1946) ........................................................................................ 5

Williams v. Hovarth
   16 Cal.3d 834 (1976) ...................................................................................... 11

**Federal Statutes**

17 U.S.C. § 106 .................................................................................................... 11

42 U.S.C. § 1983 .................................................................................................. 12

**State Statutes**

Government Code § 995 ....................................................................................... 5

**Constitutional Provisions**

U.S. Constitution Article VI, Clause 2 ................................................................. 12

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CA 91761

# I. INTRODUCTION

Pepe's Opposition to Defendants' Motion to Stay ("Opposition") relies on a false dichotomy between the state case and this case before the Court. Pepe's argues that "the state court appeal will not resolve the federal action . . . ." (Opp. at 1:10–11.) This is false. As outlined in Defendants' Motion to Stay ("Motion"), and as discussed in greater detail below, the state court case and this case are substantially similar because they concern the same nucleus of operative facts, involve the same parties, and ultimately seek the same goals. A decision in the state court of appeal will be preclusive on the issues before this Court.

Pepe's Opposition also mischaracterizes this case. This is not the typical civil rights case in which a plaintiff simply seeks damages to address a past wrong. Rather, Pepe's is seeking injunctive relief and hopes to compel action by the City. It is this desire to reformat the City's tow rotation list that prompted Pepe's to simultaneously file a writ action in the state court. That state court case has since resulted in a judgment. Meanwhile, this case has not proceeded as quickly and has resulted in no substantial holdings on the merits. While attempting to mediate the case in June 2018, and because of Pepe's counsel's serious medical issue, the parties stipulated to continue an August 2018 trial date. After the mediation was unsuccessful, on August 1, 2018, Pepe's substituted its counsel. When the parties later exchanged initial disclosures and served discovery at the end of August, it became clear that Pepe's was seeking damages for events that occurred well before February 7, 2017, the date of the City's bankruptcy confirmation. Even though Pepe's revised its damages calculations, it refused to alter its discovery requests, leading the City to believe it was continuing to litigate pre-February 7, 2017 events. Thus, while Pepe's attempts to ascribe the slow progress to Defendants, in reality, the case has been delayed by Pepe's.

Ultimately, Pepe's Opposition is meritless. Pepe's attempt to distinguish the state case from this case is unpersuasive because it focuses on differences in causes

of action pled and remedies requested. Similar arguments have been repeatedly rebuffed by other courts because they rely on the wrong standard for determining when cases are "substantially similar." Pepe's balancing of the <u>Colorado River</u> factors is also skewed. First, the risk of piecemeal litigation is significant because this Court will be required to review issues for which the state court has already issued a judgment. Second, Pepe's largely ignores the significant progress—the rendering of a judgment—made in the state court case, attributing it to "procedural differences." But, in deciding the "order" factor, courts are not tasked with measuring comparative progress in light of procedural differences, but rather are told to "analyze progress . . . with a view to the realities of the case at hand." <u>Seneca Ins. Co., Inc. v. Strange Land, Inc.</u>, 862 F.3d 835, 843 (9th Cir. 2017). The reality is this: the state court has issued a judgment on the merits. Third, while Pepe's argues that federal law will provide the basis of decision because it includes federal constitutional claims, it forgets to mention that state courts have concurrent jurisdiction over such claims, essentially neutralizing this factor. Fourth, while Pepe's may not have engaged in traditional forum shopping, by insisting that this case proceed, it is surely engaging in similar conduct by attempting to obtain a favorable (and contradictory) ruling in a different jurisdiction.

Pepe's has been the master of its lawsuits since day one. It made the conscious choice to split its cases between state and federal forums. Now that it has received an unfavorable judgment in state court, it seeks to use this Court as a means of obtaining a do-over. This smacks of gamesmanship. To the extent Pepe's disagrees with the Superior Court's holding, it should proceed with its appeal. It should not push forward with this case in an effort to get a contradictory ruling from a separate forum. Ultimately, because the Superior Court has issued a merits judgment capable of disposing of this case, and because that judgment is currently being appealed, this Court should issue a stay to promote wise judicial

administration and the conservation of judicial resources as well as municipal resources.

## II. THE STATE AND FEDERAL CASES ARISE OUT OF THE SAME CONDUCT, INVOLVE THE SAME PARTIES, AND SEEK TO VINDICATE THE SAME RIGHT

In its Opposition, Pepe's argues that the Colorado River doctrine does not apply because the state and federal cases are not substantially similar. Pepe's bases this argument in large part on the fact that it seeks different remedies in this case—specifically, monetary and injunctive relief—and that this case includes an additional First Amendment retaliation claim. Pepe's arguments are meritless because they are based on an incorrect understanding of when cases are deemed "substantially similar" pursuant to the Colorado River doctrine.

As the Ninth Circuit has held, "exact parallelism [between the state and federal cases] is not required." Nakash v. Marciano, 882 F2d 1411, 1416 (9th Cir. 1989). Rather, "state and federal proceedings are substantially similar if they arise out [of] the same alleged conduct and seek to vindicate the same rights." Goodin v. Vendley, 356 F.Supp.3d 935, 944 (N.D. Cal. 2018).

Pepe's argument—that different remedies and different causes of action are capable of defeating a showing of substantial similarity—has been repeatedly rejected. For example, in Montanore Minerals Corporation v. Bakie, 867 F.3d 1160 (9th Cir. 2017), the Ninth Circuit held a state case—in which the plaintiff sought "a declaratory judgment that [mining claims] were invalid under state and federal law"—was substantially similar to a federal case—in which the same plaintiff pursued a condemnation action concerning the same mining claims—despite alleging different causes of action "because they both concern[ed] rights to the [mining claims], name[d] the same pertinent parties, and attempt[ed] to accomplish the same goal (namely, extinguishing the [d]efendants' rights to the [mining claims])." Id. at 1164–65, 1170; see also ScripsAmerica, Inc. v. Ironridge Global

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CA 91761

LLC, 56 F.Supp.3d 1121, 1149 (C.D. Cal. 2014) (finding state and federal cases substantially similar despite federal case including claim for damages). And in Nakash v. Marciano, 882 F.2d 1411 (9th Cir. 1989), the Ninth Circuit deemed a state lawsuit and a federal lawsuit substantially similar, regardless of a wide deviation in the claims alleged in each, because the lawsuits concerned the same conduct and the same parties. Id. at 1413–14, 1416–17. Thus, Pepe's argument that inclusion of monetary damages and a First Amendment claim in its federal lawsuit renders the lawsuits non-similar is incorrect.[1]

Rather, when determining whether the cases are substantially similar, the Court must focus on the alleged conduct, the overlap in parties, and Pepe's goal. Once this is done it becomes clear that the cases are substantially similar. Both cases involve Pepe's, the City, and various individual defendants from the City. (*Compare* TAC ¶¶ 2–18 *with* Petition at ¶¶ 1–3.) Both cases center on the same conduct, including the City's tow rotation list (*compare* TAC at ¶¶ 19–29 *with* Petition at ¶¶ 1–10), the various resolutions controlling the tow rotation list (*compare* TAC at ¶¶ 30–72 *with* Petition at ¶¶ 11–38), and Pepe's attempts to petition the City (*compare* TAC at ¶¶ 84–114 *with* Petition at ¶¶ 41–61). In both cases, Pepe's ultimately seeks the same goal: consideration of its application to join the tow rotation list in a manner that does not (allegedly) violate its constitutional rights.

The case law cited by Pepe's in support of its argument—Komarnicki v. LinkUS Enterprises, LLC, No. 116CV01602DADSKO, 2017 WL 3284434, at *5 (E.D. Cal. Aug. 2, 2017)—is also readily distinguishable. In that case, the defendant—LinkUS—sought to stay a federal class action that mirrored an earlier

---

[1] Goodin v. Vandley, 356 F.Supp.3d 935 (N.D. Cal. 2018) is also on point on this issue. Despite being thoroughly discussed by Defendants in their Motion (see ECF No. 56 at 5:26–6:17), Pepe's does not even mention Goodin, let alone try to distinguish it.

filed state class action. Id at *1–2. Both lawsuits concerned alleged violations of California wage and hour laws, and both lawsuits contained similar classes. Id. at *1–2. However, in denying LinkUS's motion for a stay, the district court noted that the federal case included a PAGA claim and that other claims were brought "against a number of entities under a joint employer liability theory." Id. at *2. The court noted that because a PAGA claim acts "as a 'substitute' for [a lawsuit] brought by the state government itself," the federal case would involve complex procedural elements the state case could not resolve. Id. at *5. Furthermore, the court noted that the joint employer liability theory expanded the scope of conduct in the federal case beyond that covered by the state case. Id.

That is not the case here. Even though Pepe's did not include a First Amendment retaliation claim in its state lawsuit, it thoroughly discussed the conduct allegedly giving rise to such a claim in its petition. (Petition at ¶¶ 41–61) Thus, a final decision in the state case will be preclusive as to Pepe's retaliation claim because a final valid judgment is conclusive on the parties as to all matters, fact and law, that were or "could have been litigated . . . ." Merry v. Coast Community College Dist., 97 Cal.App.3d 214, 223 (1979) (citing Olwell v. Hopkins, 28 Cal.2d 147, 152 (1946)). Pepe's fails to address this point entirely in its Opposition. Furthermore, the extent to which the federal lawsuit includes additional individual defendants does not render the cases non-similar. Pursuant to Government Code § 995, municipalities are generally required to "provide for the defense of a civil action brought against an employee or former employee on account of an act or omission in the scope of the employee's employment." City of Bell v. Superior Court, 220 Cal.App.4th 236, 243 (2013). Thus, any distinction between the City and the individual defendants is largely illusory.

Lastly, Defendants note that Pepe's misconstrues Judge Cohn's comments regarding whether an adequate remedy at law existed. (Opp. at 7:4–13.) The issue before Judge Cohn was whether a writ—which is regarded as an exceptional

1  remedy—was appropriate pursuant to California Code of Civil Procedure § 1086.
2  Generally, a court will not rule on a writ for mandamus when there is a plain, speedy
3  and adequate remedy in the ordinary course of law.  <u>Flores v. Department of</u>
4  <u>Corrections</u>, 224 Cal.App.4th 199, 206 (2014).  Remarkably, Pepe's argued that a
5  writ was appropriate because it did not have an adequate remedy at law.  Pepe's
6  admitted that it would not be able to collect money damages in the current case
7  before this Court.  Pepe's counsel, talking about the case before this Court, stated:

> And if – even if [Pepe's] were entitled to money damages,
> where is the measure of money damages?  The measure of
> money damages is certainly uncertain.  If [Pepe's] should
> have had a contract, what would [its] profits be if – what
> profits had [it] lost, has [it] lost, because [it] doesn't have
> a contract?  That's entirely speculative.

14  (RJN, Exh. B at 19:21–20:3.)  Judge Cohn agreed and, as a result, he decided to
15  reach the merits of Pepe's writ.  Thus, Judge Cohn's comments—when considered
16  in the context of Pepe's comments—emphasize that the state case will resolve the
17  federal case in its entirety given that Pepe's itself admits that the recovery of money
18  damages is highly unlikely.

19  **III.   THE "PIECEMEAL LITIGATION" FACTOR FAVORS A STAY**
20  **BECAUSE PROCEEDING WILL RESULT IN EITHER A**
21  **CONFLICTING JUDGMENT OR A WASTE OF RESOURCES**

22  Pepe's argues that there is no "special concern for piecemeal litigation"
23  because "the issues before each court are different." (Opp at 8:22–9:11.)  Pepe's
24  again argues that this case is different from the state case because Pepe's seeks
25  different remedies and includes a separate First Amendment retaliation claim.  (<u>Id</u>.)
26  Furthermore, Pepe's also tries to refute Defendants' claim that conflicting results in
27  the state and federal cases will throw its tow rotation system into chaos.  (<u>Id</u>. at
28  9:12–24.)  All of these arguments are without merit.

Pepe's argument is largely predicated on an overly narrow reading of Seneca Ins. Co., Inc. v. Strange Land, Inc., 862 F.3d 835 (9th Cir. 2017). In citing Seneca, Pepe's hones in on a single sentence in which the Ninth Circuit admonished the district court for granting a stay without "identify[ing] *any* special concern counseling in favor of federal abstention . . . ." Id. at 843. The district court held this factor favored a stay because "th[e] case involve[d] multiple defendants, numerous claims, and crossclaims, that all present complex state tort and insurance issues . . . ." Id. Noting that this did not constitute a "special concern," the Ninth Circuit then gave the *example* of "a 'clear federal policy' of avoiding 'piecemeal adjudication of water rights'" as a special concern. Id. (citing Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 819–20.) However, the Ninth Circuit in no way held that stays should be granted only when clear federal policies are present.

Rather, case law indicates otherwise. For example, in Vaghashia Family Limited Partnership v. Vaghashia, LA CV19-01876 JAK (PLAx), 2019 WL 6974307 (C.D. Cal. Nov. 1, 2019), the district court held there was a substantial risk of piecemeal litigation when a state case and federal case raised similar issues concerning "the alleged misuse of funds by [the defendants] in connection with their roles in operating certain businesses . . . ." Id. at *5. The court noted that "[a]bsent a stay of [the federal] proceeding, both courts would have to address certain legal and factual issues that are either the same or very similar." Id. Thus, the "special concern" counseling in favor of abstention was a desire to avoid "unnecessary and inappropriate use of judicial resources that could also lead to inconsistent results." Id. In Brito v. New United Motor Mfg., Inc., No. C 06-06424-JF, 2007 WL 1345197 (N.D. Cal. May 8, 2007), the district court held there was a substantial risk of piecemeal litigation. Id. at *4. The district court noted that the state case—which was on appeal in the California Court of Appeal after a grant of summary judgment in favor of the defendants—involved "essentially the same facts" as those presented

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CA 91761

in the federal case, and that if both lawsuits were allowed to move forward, that "[t]he duplication of effort would be extensive." Id.; see also American Int'l Underwriters, Inc. v. Continental Ins. Co., 843 F.2d 1253, 1258 (9th Cir. 1988) ("Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results."). Thus, a "special concern" can include the duplication of efforts that is likely to result in conflicting rulings between a state and federal court.

As discussed in Defendants' Motion, the Superior Court has already issued a ruling holding that the statutory classification implemented by the City did not violate the Equal Protection clause. Thus, allowing this case to move forward will result in one of two outcomes: (1) it will simply result in the same holding, thus wasting judicial resources and duplicating efforts, or (2) it will result in a different holding, leading to conflicting judgments. Thus, allowing this case to proceed creates a substantial risk of piecemeal litigation.

Furthermore, Pepe's efforts to negate this factor by distinguishing this case from the state case are also disingenuous. Pepe's argues that the state case deals only with whether "a portion of [a] City Council Resolution is unconstitutional" whereas this case will involve "[r]esolving whether monetary damages and injunctive relief are warranted . . . ." (Opp. at 9:5–7.) What Pepe's fails to mention is that in order to reach the issue of money damages[2], this Court will need to issue a holding that conflicts with that issued by the Superior Court. Thus, Pepe's efforts to

---

[2] Pepe's attempt to distinguish between the injunctive relief sought in this case and the relief sought in the state case is also disingenuous. In both cases, Pepe's seeks to invalidate the operative resolutions and to be considered for the tow rotation list absent the requirements imposed by these resolutions. Admittedly, the federal case goes further in that it seeks to invalidate all of the TSAs, but this raises other serious issues, most notably that Pepe's has failed to join parties indispensable to this action. See Northrop Corp. v. McDonnell Douglas Corp., 705 F.2d 1030, 1044 (9th Cir. 1983) ("[A]ll parties who may be affected by a suit to set aside a contract must be present.").

distinguish the cases only highlights the significant risk of "reaching different results" in separate courts. American Int'l Underwriters, 843 F.2d at 1258.

Lastly, Pepe's is incorrect in its claim that contradictory rulings will not interfere with the City's tow rotation list. The chaos will result from having to choose between two contradictory holdings. Furthermore, this argument again appears to shift the focus of Pepe's Equal Protection claim. In its Opposition to Defendants' Motion for Judgment on the Pleadings, Pepe's argued that the Equal Protection claim concerned the City's classification of Pepe's "as a non-rotation tower . . . ." (ECF No. 45 at 18:14–16.) Thus, the issue is not whether it is proper to have a 65,000 square foot requirement, but whether it was proper for the City to grandfather the Tow Contractors and exempt them from that requirement. Put another way, an adverse ruling in this case will not compel the City to eliminate the 65,000 square foot requirement; it will simply hold that it was improper to treat the incumbent Tow Contractors differently from new applicants. The chaos that will ensure will stem from the City trying to make sense of adverse, but not yet final, rulings from two lower courts, one that permits the distinction and one that prohibits it.

Thus, Pepe's is incorrect in asserting that there is not a significant risk of piecemeal litigation.

## IV. THE SIGNIFICANT PROGRESS MADE IN THE STATE COURT FAVORS A STAY

In discussing "the order in which the forums obtain jurisdiction," Pepe's argues that this factor weighs against a stay because the differences in progress between the two cases is a result of either (1) delay tactics by Defendants, or (2) procedural distinctions between the two cases. (Opp. at 9:26–10:20.) As to Pepe's first argument, this a gross mischaracterization of Defendants' acts. After the Court issued its holding on Defendants' Motion to Dismiss Pepe's Third Amended Complaint, the parties quickly set about mediating the cases in an attempt to

informally resolve the lawsuits. As part of the mediation effort, the parties jointly stipulated to continue an August trial date due to Pepe's then-attorney suffering from significant medical complications. On August 1, 2019, Pepe's retained new counsel. Shortly thereafter, the parties proceeded to exchange initial disclosures and serve discovery. Pepe's initial disclosures, in which its sought over $2 million in damages, and its served discovery, in which it sought documents going back to the mid-2000s, made it clear to Defendants that Pepe's was attempting to litigate events that extended well beyond February 7, 2017, the confirmation date of the City's bankruptcy. Thus, the filing of the bankruptcy stay was not a delay tactic, but a response to Pepe's acts. Though Pepe's later clarified the scope of its damages calculation, it failed to tailor its discovery requests, intimating to Defendants that Pepe's would still litigate issues that occurred prior to February 7, 2017. Importantly, Pepe's was the one that triggered Defendants' decision to seek a bankruptcy stay by attempting to broaden this lawsuit to cover a period spanning almost two decades.

Furthermore, Pepe's assertion that the difference in progress should be ignored because of procedural differences is unfounded and unsupported by any case law. As Pepe's cites in its own Opposition, the emphasis must be on "the progress made in each case," not the progress made in each case while also accounting for procedural variances. (Opp. at 9:28 (quoting Seneca Ins. Co., Inc., 862 F.3d at 843).)

The reality of the situation is that there is a merits decision in the Superior Court that it is capable of disposing of this entire matter if upheld on appeal while this case has yet to resolve any merits issues. See Montanore, 867 F.3d at 1168 (finding factor favored a stay because "the state court proceedings had progressed significantly"); see also Brito, 2007 WL 1345197 at *4 (finding factor favored a stay because "the state action ha[d] progress much further than the instant federal action . . . ."). Furthermore, no discovery has been conducted by the parties to date other

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CA 91761

55600.00507\32596009.3

10

Case No. 5:18-cv-02277-SVW (SPx)
MEMORANDUM OF POINTS AND AUTHORITIES

than the exchange of the parties' initial disclosures and service of discovery requests. As set forth in their Stipulation to Continue the Trial and Pretrial Dates (ECF No. 58), both parties halted discovery practice pending a decision by this Court on Defendants' notice pertaining to the bankruptcy stay. Thus, this factor favors a stay.

## V. STATE COURTS HAVE CONCURRENT JURISDICTION OVER FEDERAL CONSTITUTIONAL CLAIMS

Pepe's argues that the factor examining whether federal law or state law provides the rule of decision on the merits weighs heavily against a stay because this case concerns claims brought pursuant to the First and Fourteenth Amendments of the U.S. Constitution. (Opp. at 10:23–11:10.) Pepe's claims that "the presence of federal claims, as here, 'must always be a major consideration weighing against surrender.'" (Id. at 11:8–9 (quoting Travelers Indem. Co. v. Madonna, 914 F.2d 1364, 1370 (9th Cir. 1990)). Pepe's argument asserts the wrong standard.

While in some situations the presence of federal claims can cause this factor to weigh heavily against a stay, this usually occurs only in instances in which the claims are granted exclusive federal jurisdiction. See Intel Corp. v. Advanced Micro Devices, Inc., 12 F.3d 908, 912 (9th Cir. 1993) (involving claim of copyright infringement under 17 U.S.C. § 106). However, in instances of concurrent jurisdiction, federal courts have routinely held "the source-of-law factor has less significance . . . ." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 (1983). It is well established that state courts have concurrent jurisdiction over federal constitutional claims. Williams v. Hovarth, 16 Cal.3d 834, 837 (1976); Brown v. Pitchess, 13 Cal.3d 518, 522 (1975). Pepe's ignores this standard entirely in its arguments. Thus, this factor should be treated as neutral, or even as favoring a stay given Pepe's inclusion of claims arising under the California Constitution.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CA 91761

## VI. THE STATE COURT PROCEEDINGS CAN ADEQUATELY PROTECT PEPE'S FEDERAL RIGHTS

Pepe's also claims that a stay is not warranted because the state court cannot adequately protect Pepe's federal rights. Pepe's again claims that "the state court proceedings are not substantially similar to [this] action" and that the Superior Court's ruling will not resolve the issue of monetary damages and injunctive relief. (Opp. at 11:18–24.) Furthermore, Pepe's argues the state court action will not resolve the First Amendment claim. (Id. at 11:24–25.) Pepe's arguments misconstrue the focus of this factor.

"The adequacy factor looks to whether the state court might be unable to enforce federal rights." Seneca, 862 F.3d at 845. For example, in Moses Cone, the Supreme Court held this factor weighed against a stay because there was substantial doubt that a state court would be able to compel arbitration under § 4 of the Federal Arbitration Act. Moses Cone, 460 U.S. at 26. And in the case cited by Pepe's— McKee v. Peoria Unified School Dist., 963 F.Supp.2d 911 (D. Ariz. 2013)—the district court held this factor weighed against a stay because the plaintiff could not bring his federal claims in an administrative appeal. Id. at 922.

Neither of these situations apply to this case. Pepe's was fully capable of bringing its First Amendment claim in state court and seeking damages in that case by filing a 42 U.S.C. § 1983 claim in conjunction with the writ. Furthermore, given that Article VI, Clause 2 of the U.S. Constitution mandates that "the Judges in every State shall be bound [by the Constitution and laws of the United States]," Pepe's cannot plausibly argue that a state court would not have been capable of protecting its federal rights. Lastly, to the extent that Pepe's again attempts to argue this case is substantially different from the state case, Defendants incorporate the arguments previously presented in Section II. Ultimately, this factor must be treated as neutral. See Aetna Inc. v. Whatley Kallas, LLP, No. CV 19-3532-JFW (JEMx), 2019 WL

4137614, at *4 (C.D. Cal. July 9, 2019) (holding factor was neutral when "both the state court and [the federal court] ha[d] jurisdiction over all of [plaintiff's] claims.").

## VII. FAILING TO STAY THIS CASE WILL PROMOTE FORUM SHOPPING

Defendants acknowledge that this case does not present the typical signs of forum shopping. Generally, federal courts find that this factor favors a stay when a party decides to file suit in federal court after suffering unfavorable decisions after lengthy litigation in state court. (See Opp. at 12:6–12 (summarizing case law).) However, in certain cases, district courts have also held that this factor favors a stay when "allowing a substantially similar federal action to proceed would likely encourage forum shopping." Gintz v. Jack In The Box, Inc., No. C 06-02857, 2006 WL 3422222, at *7 (N.D. Cal. Nov. 28, 2006). Furthermore, Pepe's behavior involves the antics that district courts resolve to negate when finding that this factor favors a stay. For example, in Nakash, the Ninth Circuit noted this factor favored a stay when the defendant in a state court action filed suit in federal court following a string of unfavorable decisions. Nakash, 882 F.2d at 1417. And in American International Underwriters, the Ninth Circuit held this factor favored a stay when the plaintiff sought to abandon "its state court case solely because it believe[d] that the Federal Rules of Evidence [we]re more favorable . . . ." American Intern. Underwriters, 843 F.2d at 1259. This is the exact type of behavior in which Pepe's is engaging. Pepe's has received an unfavorable merits decision in the Superior Court and it is now attempting to push forward with its federal case to undo those results. Thus, Pepe's antics amount to nothing more than an attempt to "avoid [an] adverse ruling[ ] by the state court." Nakash, 882 F.2d at 1417. Furthermore, Pepe's attempt to argue that this factor cannot favor a stay because the state and federal cases were filed only two days apart ignores the mandate that the Colorado River doctrine is to be considered in a "flexible and pragmatic way . . . ." American Intern. Underwriters, 843 F.2d at 1259.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
2855 E. GUASTI ROAD, SUITE 400
ONTARIO, CA 91761

## VIII. THE STATE COURT PROCEEDING WILL RESOLVE ALL ISSUES BEFORE THE FEDERAL COURT

Pepe's also argues that a stay is not warranted because the state court will not resolve all issues before the Court. In particular, Pepe's argues that it "seeks entirely different remedies from the state court action and includes additional claims arising from federal law that are not addressed in the state proceeding." However, as discussed in Section II, because the state case and the federal case involve the same facts and the same parties, a decision by the Court of Appeal to uphold the Superior Court ruling will dispose entirely of this case. As stated previously, Pepe's concerns over damages presupposes that the Superior Court's decision on the merits was incorrect. Furthermore, even in the odd chance that the Court of Appeal does reverse the Superior Court's decision on the merits, the issues before this Court will be significantly reduced. If the statutory classification is found to be irrational, the issue that would be before this Court is whether Pepe's can collect compensatory damages[3], which, according to its own arguments presented in the state court case, it cannot do because they would be too speculative. See Section II; see also Rotondo v. Blue Cross of Idaho, No. 1:11-cv-00493-EJL-CWD, 2012 WL 1664089, at *6 (D. Id. Mar. 2, 2012) (holding that stay was appropriate when state court case could "considerably narrow . . . the need for further proceedings in [a federal case].").

---

[3] Importantly, Pepe's cannot seek punitive damages for the alleged First Amendment retaliation claim because the individual defendants were granted qualified immunity on this claim. Thus, because Pepe's Equal Protection claim and the First Amendment claim seek the same remedies, there would be no need for the Court to waste judicial resources on the First Amendment issue if the Court of Appeal reverses the Superior Court's holding and determines that the City's statutory classification lacked a rational basis.

## IX. CONCLUSION

For the above stated reasons, Pepe's fails to refute Defendants' claim that the state court case and this case are substantially similar and that the Colorado River factors favor the granting of a stay.

Dated:   December 30, 2019        BEST BEST & KRIEGER LLP

By: */s/ Richard T. Egger*
    RICHARD T. EGGER
    DAMIAN A. NORTHCUTT
    AVI W. RUTSCHMAN
    Attorneys for Defendants
    CITY OF SAN BERNARDINO;
    VIRGINIA MARQUEZ, BENITO J.
    BARRIOS, JOHN VALDIVIA, FRED
    SHORETT, BESSINE L. RICHARD,
    JAMES L. MULVIHILL, R. CARE
    DAVIS, JARROD BURGUAN, PAU.
    WILLIAMS, GARY D. SAENZ, JOLENA
    GRIDER, ANDREA MILLER, ANDREA
    TRAVIS MILLER; and MARK SCOTT